MICHAEL LAWLOR,                     *        IN THE
Box 10103
Trenton, New Jersey  08650
                                    *        CIRCUIT COURT
        Plaintiff

vs.                                 *        FOR

WRIGHT MEDICAL TECHNOLOGY,
INC.                                *        BALTIMORE CITY
5677 Airline Road
Arlington, Tennessee 38002
<u>Serve On</u>: CSC Lawyers Incorporating   *        CASE NO. :
Service Company
11 East Chase Street
Baltimore, Maryland 21202           *

and                                 *

WRIGHT MEDICAL GROUP, INC.
5677 Airline Road                   **L 05 CV  219**
Arlington, Tennessee 38002          *
<u>Serve On</u>: F. Barry Bays, President
5677 Airline Road
Arlington, Texas 38002              *

        Defendants
    *        *        *        *        *

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Michael Lawlor, by undersigned counsel, sues the Defendants named herein,

and for cause states as follows.

1. Plaintiff Michael Lawlor is a resident of New Jersey.

2. Wright Medical Technology, Inc. ("Wright Medical"), is a Delaware corporation

whose principal place of business is Arlington, Texas and is registered to conduct business in the

State of Maryland. Wright Medical is an operating subsidiary of Wright Medical Group, Inc.

("WMG"). Wright Medical and WMG are the designers, developers, manufacturers and sellers of

medical devices, and in particular, reconstructive joint devices and other biologics, including the

Conserve © Plus Total Resurfacing Hip System ("hip system"), which has been implanted in human subjects such as Mr. Lawlor as part of a clinical trial conducted at various facilities across the country including Sinai Hospital in Baltimore City.

3. Wright Medical Group, Inc. ("WMG"), upon information and belief, is a Delaware corporation whose principal place of business is Arlington, Texas and it through its operating subsidiaries such as Wright Medical, conducts business in the Baltimore City, Maryland.

4. At all times relevant, and prior to the date on which their hip system was implanted in the Plaintiff, Wright Medical and WMG had highly trained marketing departments which utilized orthopaedic surgeons to promote their hip system product by offering clinical symposia and seminars, advertisements, brochures, mailings and various other methods to advertise and promote the alleged benefits associated with the use of the hip system product. Further, they engaged in promotional activities to create consumer demand for the hip system product through the print media, including magazines such as Men's Health, to advertise the hip system product to the general public, tout its effectiveness, safety and benefits over other, more traditional types of hip surgery for orthopaedic problems such as osteoarthritis and avascular necrosis.

5. These advertising and promotional campaigns intentionally, falsely and fraudulently misrepresented and misstated the safety and benefits of the hip system, and failed to reveal the severity and frequency of the known and potential health hazards and risks associated with its use. The advertising and promotional campaign was designed and developed with the intention of deceiving potential human subjects, consumers and health care providers as to the potential risks and health hazards associated with the hip system.

6. In particular, the advertising and promotional materials falsely and fraudulently failed

-2-

to advise the potential human subjects, the public and health care providers that the hip system had not been adequately tested nor had the severity or frequency of adverse side effects been investigated adequately, particularly since the defendants knew that the hip system could compromise the immune system and thereby lead to developing lymphomas and leukemias as well as serious nerve damage and the risk of limb shortening, among other conditions.

7. The Plaintiff, after reading about the hip system product in a Men's Health magazine, was referred by one of WMG and/or Wright Medical's orthopaedic surgeon promoters, Harlan Amstutz, M.D., to Michael Mont, M.D. at Sinai Hospital where the Plaintiff initially consulted with Dr. Mont in September 2000, with regard to the medical conditions with which he had been diagnosed - bilateral knee and hip avascular necrosis.

8. During the initial visit with Dr. Mont, x-rays were taken and the Plaintiff was advised by Dr. Mont that he was a candidate for an experimental hip replacement device which Dr. Mont was implanting in human subjects. During the initial meeting, surgery for each hip was scheduled - October 4, 2000 for the left hip and November 29, 200 for the right hip.

9. At this time, Wright Medical was enrolling human subjects in its clinical trial for the metal on metal Conserve © Plus Total Resurfacing Hip System, and Dr. Mont and other physicians at the Hospital were investigators who were implanting the experimental device in human subjects. Dr. Mont and other health care providers encouraged the Plaintiff to undergo the experimental procedure using the hip system which had not been approved by the FDA.

10. Human subjects such as Mr. Lawlor would essentially be human guinea pigs who would be used to advance medical science and the profits and reputation of the defendants, the doctors and Sinai Hospital.

11. The doctors and the defendants knew or had reason to know that patients such as the Plaintiff were vulnerable and that there was the probability that an individual in the position of Mr. Lawlor would be under a "therapeutic misconception" that enrolling in such a clinical trial would be in his best interest.

12. The Plaintiff underwent a left hip bone grafting procedure on October 4, 2000 and a metal-on-metal resurfacing total right hip replacement using the Conserve © Plus Total Resurfacing Hip System on November 29, 2000. Both procedures were performed at Sinai Hospital.

13. Prior to the surgical procedure of November 29, 2000, Mr. Lawlor was not provided with a copy of the special consent form concerning the experimental hip system such that he was able to review the form, seven (7) page in length, understand the contents of the form and/or ask questions that he may have had about the procedure or the device or the potential risks and complication that might be associated with this experimental device.

14. Consent was not obtained under circumstances that allowed Mr. Lawlor sufficient opportunity to consider whether or not to participate and that minimized the possibility of coercion or undue influence; Mr. Lawlor saw the "consent" document for the first time just minutes before he was to be taken to the operating room on November 29, 2000. At that time, he had already been pre-medicated with pharmaceuticals that impaired his ability to read and comprehend.

15. The Plaintiff never received a copy of the "consent" document until 2003.

16. Had the Plaintiff received a copy of the "consent" document with sufficient opportunity to review and comprehend it, he would not have consented to the procedure as the

"consent" document indicates that there is a risk of developing damage to his immune system such that he may develop lymphoma or leukemia as a result of having the hip system implanted in his body, nerve damage and other serious medical conditions.

17. As a result of the procedure to his right hip, the Plaintiff has suffered right femoral and obturator nerve damage, a shortened right leg, among other injuries to his right leg and hip, is unable to ambulate in a normal manner and is totally disabled from performing his occupation as a forklift operator with the General Motors Corporation.

18. At all times relevant to the wrongs alleged, the Plaintiff was acting with due care and the injuries and damages sustained are a result of the negligence and omissions of the defendants.

19. As a direct and proximate result of the negligence of the defendants, the Plaintiff has suffered and will continue to suffer in the future, physical pain and suffering, physical deformity, emotional pain and suffering and mental anguish.

20. As a further direct and proximate result of the negligence and omissions of the defendants, Plaintiff suffers from a fear of sustaining damage to his immune function and of developing cancer in the form of lymphomas and leukemias.

21. As a further direct and proximate result of the negligence of the defendants, the Plaintiff has incurred in the past and will incur in the future, medical, rehabilitation and other expenses, as well as the loss of income and future earning capacity.

<u>COUNT I</u>

22. Plaintiff incorporates by reference all other paragraphs of this pleading as if fully set forth herein.

23. The hip system was placed in the hands of operating orthopaedic surgeons and sold by

-5-

the product defendants in a defective and unreasonably dangerous condition in that the severity or frequency of adverse side effects had not been adequately investigated, particularly since the defendants knew that the design of the device and the materials used, with normal wear on the metal parts of the hip system, would release metal debris and cause metal ion release, which could cause compromise of the immune system and lead to the patient's developing lymphomas and leukemias, and that the hip system could also cause nerve damage and limb shortening, among other conditions.

24. The hip system implanted in Mr. Lawlor was in the same condition and without substantial change at the time it was placed in his body and thereby caused him injury.

25. The hip system was used in the manner in which it was intended by the operating surgeon and by Mr. Lawlor.

26. The injuries suffered by Mr. Lawlor were caused by the defective design of the hip system product.

**WHEREFORE**, Plaintiff Michael Lawlor claims compensatory damages in the amount of Three Million Dollars ($3,000,000.00) against the defendants.

## COUNT II

27. Plaintiff incorporates by reference all other paragraphs of this pleading as if fully set forth herein.

28. The hip system was placed in the hands of operating orthopaedic surgeons and sold by the defendants in a defective and unreasonably dangerous condition in that the hip system contained a latent manufacturing flaw in that the design of the device and the materials used, with normal wear on the metal parts of the hip system, would release metal debris and cause

metal ion release, causing compromise of the immune system and lead to patient's developing lymphomas and leukemias, and that the hip system could also cause nerve damage and limb shortening, among other conditions.

29. The hip system implanted in Mr. Lawlor was in the same condition and without substantial change at the time it was placed in his body and thereby caused him injury.

30. The hip system was used in the manner in which it was intended by the operating surgeon and by Mr. Lawlor.

31. The injuries suffered by Mr. Lawlor were caused by manufacturing defects in the hip system product.

**WHEREFORE**, Plaintiff Michael Lawlor claims compensatory damages in the amount of Three Million Dollars ($3,000,000.00) against the defendants.

<u>COUNT III</u>

32. Plaintiff incorporates by reference all other paragraphs of this pleading as if fully set forth herein.

33. The hip system placed in the hands of operating orthopaedic surgeons and sold by the product defendants was in a defective and unreasonably dangerous condition in that the design of the hip system product created an unreasonable risk of harm and failed to include a warning necessary for the safe and proper use of the product by surgeons, human subjects and consumers after the defendants knew or should have known of the serious risk of injury that would occur with the continued implantation of the hip system.

34. The defendants generated warnings that were wholly inadequate to alert human subjects, consumers and doctors of the actual risks associated with the use of their product and

which were known to the product defendants. Further, the defendants failed in the following respects:

      a.      to adequately test and study the hip system, so as to ascertain the nature, frequency, and severity of all adverse effects arising from the known and/or foreseeable use of the products;

      b.      to adequately warn physicians and the product users of the risks and dangers associated with the use of the hip system;

      c.      to adequately warn physicians or product users that, due to the serious risks and limited benefits of the hip system, other methods of hip replacement would be safer and more effective;

      d.      to conduct adequate monitoring and reporting of adverse effects during clinical trials; and

      e.      to discontinue the implantation of the hip system in human subjects.

35. The hip system implanted in Mr. Lawlor was in the same condition and without substantial change at the time it was placed in his body and thereby caused him injury.

36. The hip system was used in the manner in which it was intended by the operating surgeon and by Mr. Lawlor.

37. The injuries suffered by Mr. Lawlor were caused by the failure to provide adequate warnings about the risks and complications that could result from implantation of the hip system such that, in normal wear on the metal parts of the hip system, there would be a release of metal debris and metal ions, which can cause compromise of the immune system and could lead to the patient's developing lymphomas and leukemias, and that the hip system could also cause nerve

-8-

damage and limb shortening, among other conditions.

**WHEREFORE**, Plaintiff Michael Lawlor claims compensatory damages in the amount of Three Million Dollars ($3,000,000.00) against the defendants.

## COUNT IV

38. Plaintiff incorporates by reference all other paragraphs of this pleading as if fully set forth herein.

39. The defendants had the duty to exercise reasonable care in the design, manufacture, sale and/or distribution of the hip system and to assure that the product, once placed into the stream of commerce, did not cause users to suffer from unreasonable, dangerous side effects. The defendants failed to exercise ordinary care in the design, manufacture, sale, testing, quality assurance, quality control, and/or distribution of the product and knew of or should have known that the product created a risk of unreasonable, dangerous side effects, including compromise of the immune system that could lead to the patient's developing lymphomas and leukemias as well as serious nerve damage and limb shortening, among other conditions.

40. Further, the defendants were negligent in that they:

    a.    failed to use due care in designing and manufacturing the hip system so as to avoid the aforementioned risks to individuals;

    b.    failed to accompany their product with proper warnings regarding all known and reasonably foreseeable adverse side effects associated with the use of the hip system and the severity and duration of such adverse effects;

    c.    failed to conduct appropriate surveillance and monitoring to determine the safety of the hip system and to adequately test and study the hip system, so

as to ascertain the nature, frequency, and severity of all adverse effects

arising from the known and/or foreseeable use of the products;

d.      failed to provide appropriate information and adequate training to health

care providers regarding appropriate use of the hip system;

e.      failed to conduct adequate monitoring and reporting of adverse effects

during clinical trials;

f.      failed to warn that the hip system could cause  serious health risks; and

g.      failed to discontinue the implantation of the hip system in human subjects.

41. Despite the fact that the defendants knew or should have known that the

hip system caused unreasonable, dangerous side effects, these defendants continued to market the

hip system to health care providers and/or to consumers, including the Plaintiff, when there were

safer, alternative methods of hip surgery available.

42. The defendants knew or should have known that consumers such as the

Plaintiff, Michael Lawlor, would suffer foreseeable injury as a result of defendants' failure to

exercise ordinary care as described above.

43. The injuries suffered by Mr. Lawlor were caused by the negligence of the defendants.

**WHEREFORE**, Plaintiff Michael Lawlor claims compensatory damages in the amount

of Three Million Dollars ($3,000,000.00) against the defendants.

## COUNT V

44. Plaintiff incorporates by reference all other paragraphs of this pleading as if fully set

forth herein.

45. The defendants knowingly, willfully, falsely and fraudulently, through their

-10-

advertising, labeling, promotional literature, sales personnel and product brochures  made

representations to consumers and to health care providers that the hip system was an effective

and acceptably safe method for individuals with certain medical conditions affecting the hip

joints.

46. The defendants concealed from the public and physicians, those reports of

adverse experiences involving the product and grossly under reported the occurrence of

complications.

47. The defendants knowingly, fraudulently and willfully misrepresented the safety,

effectiveness and benefits of the hip system and the nature of the studies and the purported

findings/results of those studies in an effort to maximize profits and increase the sales of the hip

system.

48. These material and false representations were made knowingly with the purpose

and intention of deceiving consumers like the Plaintiff and physicians who reasonably relied on

these misrepresentations.

49.  As a direct and proximate result of the Plaintiff Michael Lawlor's reasonable reliance

on these misrepresentations, he agreed to undergo a surgical procedure and have the hip system

implanted in his body and as a direct result, he was caused to suffer physical and emotional pain

and suffering as well as pecuniary losses.

**WHEREFORE**, Plaintiff Michael Lawlor, claims compensatory damages of Three

Million Dollars ($3,000,000.00) and punitive damages of Six Million Dollars ($6,000,000.00)

against the defendants.

## COUNT VI

50. Plaintiff incorporates by reference all other paragraphs of this pleading as if fully set forth herein.

51. Plaintiff is consumer as defined by Commercial Law Article § 13-101(c) of the Maryland Code.

52. The defendants violated Commercial Law Article § 13-301 of the Maryland Code and committed unfair and deceptive trade practices by (1) using or employing false, misleading or deceptive acts or practices which deceived and mislead consumers such as the Plaintiff, (2) represented that the hip system product was of a certain level of safety, effectiveness, use, benefit, and characteristic which it did not have, (3) failed to state material facts about the hip system and its potential risks and complications including compromise of the immune system that could lead to the patient's developing lymphomas and leukemias as well as serious nerve damage, and limb shortening, among other conditions, thereby deceiving the Plaintiff and inducing him to agreeing to have the hip system implanted in his body, and (4) knowingly concealed material facts about the hip system with the intent that an individual in the Plaintiff's position would rely upon these misrepresentations in agreeing to have the hip system implanted in their body.

53. The conduct of the defendants was unconscionable in that it took advantage of the lack of knowledge, ability, experience or capacity of the Plaintiff to protect his interests.

54. The defendants' actions were the producing cause of the injuries and damages suffered by the Plaintiff.

**WHEREFORE**, Plaintiff Michael Lawlor, claims compensatory damages of Three

Million Dollars ($3,000,000.00) plus attorney's fees against the defendants.

<u>COUNT VII</u>

55. Plaintiff incorporates by reference all other paragraphs of this pleading as if fully set forth herein.

56. The defendants owed a duty to the Plaintiff to periodically review clinical trial sites such as Sinai Hospital to insure that appropriate protocols and procedures were adopted by the Institutional Review Board at Sinai and were in place so that human subjects such as the Plaintiff who participated in clinical investigations were adequately advised of all material facts and information available and relevant to the proposed course of treatment and any material risks or dangers inherent in the proposed course of treatment, the probability of success of the proposed treatment as well as the risks and benefits of various, alternative methods and types of treatment that could have been utilized and to insure that appropriate protocols and procedures were in place so that investigators would act in accordance with applicable regulations regarding the protection of human subjects such as the Plaintiff.

57. The defendants failed in those duties owed to the Plaintiff and were negligent in failing to having appropriate oversight of the protocols and procedures in place by the Institutional Review Board at Sinai to insure that human subjects such as the Plaintiff received effective informed consent and were provided relevant and material facts and information about their condition and the potential for serious, life-threatening adverse effects so that an informed decision could have been made by the Plaintiff to protect his right to self-determination and in failing to insure that the investigators would act in accordance with applicable regulations regarding the protection of human subjects such as the Plaintiff.

-13-

58. As a direct and proximate result of the defendants' negligent acts and omissions, the Plaintiff was caused to suffer physical and emotional pain and suffering as well as pecuniary losses.

**WHEREFORE**, Plaintiff Michael Lawlor claims compensatory damages in the amount of Three Million Dollars ($3,000,000.00) against the defendants.

<u>COUNT VIII</u>

59. Plaintiff incorporates by reference all other paragraphs of this pleading as if fully set forth herein.

60.The defendants knowingly, falsely and negligently, through their advertising, labeling, promotional literature, sales personnel and product brochures made representations to consumers and to the health care providers that the hip system was an effective and acceptably safe method for individuals with certain medical conditions affecting the hip joints.

61. The defendants concealed from the public and physicians, those reports of adverse experiences involving the product and grossly under reported the occurrence of complications.

62. The defendants negligently misrepresented the nature of the studies and the purported findings/results of those studies in an effort to maximize profits and increase the sales of the hip system.

63. These material and false representations were made negligently with the purpose and intention of deceiving consumers and physicians who reasonably relied on these misrepresentations.

64. As a direct and proximate result of the Plaintiff Michael Lawlor's reasonable reliance

-14-

on these misrepresentations, he agreed to undergo a surgical procedure and have the hip system implanted in his body and as a direct result, he was caused to suffer physical and emotional pain and suffering as well as pecuniary losses.

**WHEREFORE**, Plaintiff Michael Lawlor claims compensatory damages in the amount of Three Million Dollars ($3,000,000.00) against the defendants.

## COUNT IX

65. Plaintiff incorporates by reference all other paragraphs of this pleading as if fully set forth herein.

66. The conduct of the defendants described herein constitutes an agreement of two or more persons to engage in tortious conduct in furtherance of a civil conspiracy to deceive human subjects such as the Plaintiff so that they would agree to undergo the experimental surgical procedure involving the hip system.

67. Human subjects such as Mr. Lawlor would essentially be human guinea pigs who would be used to advance medical science and the profits and reputation of the defendants.

68. As a direct result of conduct of the defendants, the Plaintiff agreed to have the experimental hip system implanted in his body and has sustained grievous and permanent injuries and damages as a result.

**WHEREFORE**, Plaintiff Michael Lawlor, claims compensatory damages of Three Million Dollars ($3,000,000.00) and punitive damages of Six Million Dollars ($6,000,000.00) against the defendants.

## COUNT X

69. Plaintiff incorporates by reference all other paragraphs of this pleading as if fully set

forth herein.

70. At the time that the hip system was purchased by Plaintiff and implanted in him, the defendants impliedly warranted to the Plaintiff and to health care providers that the hip system product was merchantable and fit for the ordinary purposes for which it was intended, i.e., for orthopaedic use for the treatment of avascular necrosis, among other bone conditions, from which the Plaintiff suffered.

71. Defendants had reason to know that persons in the position of the Plaintiff would agree to have the hip system implanted to treat conditions such as avascular necrosis and other bone conditions and that persons such as the Plaintiff would rely on the superior knowledge and representations made by the defendants as to the fitness of the hip system for use in human subjects.

72. The hip system did not conform to the implied warranties as to fitness for a particular purpose or to merchantability in that the hip system created a risk of unreasonable, dangerous side effects, including compromise of the immune system that could lead to the patient's developing lymphomas and leukemias as well as serious nerve damage and limb shortening, among other conditions.

73. Defendants breached their implied warranties of merchantability and fitness for a particular purpose to the Plaintiff and as a direct result, he sustained grievous and permanent injuries and damages.

**WHEREFORE**, Plaintiff Michael Lawlor, claims compensatory damages of Three Million Dollars ($3,000,000.00) against the defendants.

## COUNT XI

74. Plaintiff incorporates by reference all other paragraphs of this pleading as if fully set forth herein.

75. At the time that the hip system was purchased by Plaintiff and implanted in him, the defendants had expressly warranted to the Plaintiff and to health care providers that the hip system product was safe, effective, beneficial and suitable for orthopaedic use for the treatment of avascular necrosis, among other bone conditions, from which the Plaintiff suffered.

76. Defendants had reason to know that persons in the position of the Plaintiff would agree to have the hip system implanted to treat conditions such as avascular necrosis and other bone conditions and that persons such as the Plaintiff would rely on the superior knowledge, representations and express warranties made by the defendants as the basis for agreeing to have the hip system implanted in their bodies.

77. The hip system did not conform to the express warranties in that the hip system created a risk of unreasonable, dangerous side effects, including compromise of the immune system that could lead to the patient's developing lymphomas and leukemias as well as serious nerve damage and the risk of limb shortening, among other conditions.

78. Defendants breached their express warranties to the Plaintiff and as a direct result, he sustained grievous and permanent injuries and damages.

**WHEREFORE**, Plaintiff Michael Lawlor, claims compensatory damages of Three Million Dollars ($3,000,000.00) against the defendants.

_Louise A. Lock_

Louise A. Lock
Louise A. Lock, P.A.
301 North Charles Street, Suite 500
Baltimore, Maryland 21201
410.727.4868

## DEMAND FOR JURY TRIAL

Plaintiff elects to have his claims tried before a jury.

_Louise A. Lock_

Louise A. Lock
Louise A. Lock, P.A.
301 North Charles Street, Suite 500
Baltimore, Maryland 21201
410.727.4868

-18-

Circuit Court for <u>Baltimore City</u>
                        City or County

# CIVIL—NON-DOMESTIC CASE INFORMATION SHEET

*Directions:*

*Plaintiff: This Information Sheet must be completed and attached to the complaint filed with the Clerk of Court. A copy must be included for each defendant to be served. NOTE: If this information sheet is not completed, no action on the case will commence and the complaint may be subject to dismissal.*

*Defendant: You must complete bottom portion on page 2 and file with your answer. This Information Sheet cannot be accepted as an answer or response. Failure to file this form will be deemed to be an agreement with the Plaintiff's information.*

CASE NAME: <u>Michael Lawlor</u>   v   <u>Technology, et al.</u>   CASE NUMBER: _____
                 Plaintiff              Defendant                          (Clerk to insert)

PLAINTIFF'S NAME: <u>Michael Lawlor</u>   PHONE: ( 609 ) 689-1565

ADDRESS: <u>Box 10103, Trenton, New Jersey 08650</u>

PLAINTIFF'S ATTORNEY'S NAME: <u>Louise A. Lock, Esquire</u>   PHONE: ( 410 ) 727-4868

ATTORNEY'S ADDRESS: <u>301 North Charles Street, Suite 500, Baltimore, Maryland 21201</u>

☐ I am not represented by an attorney

JURY DEMAND: ☒ Yes   ☐ No      Anticipated Length of Trial: __7__ days or _____ hours

RELATED CASE PENDING? ☒ Yes   ☐ No      If Yes, Case #(s), if known: _____

Has any form of Alternate Dispute Resolution (ADR) been tried?  ☐ Yes  ☒ No   If yes, describe: _____

_____

Is there any reason ADR is not advisable?  ☐ Yes   ☒ No   If so, state reason _____

SPECIAL ADA REQUIREMENTS?   ☐ Hearing impaired interpreter   ☐ Other ADA accommodation

## NATURE OF ACTION

| TORTS | | REAL PROPERTY |
|---|---|---|
| **PERSONAL INJURY**/with or without property damage | **PROPERTY DAMAGE ONLY** | ☐ Ejectment/Title Dispute |
| ☐ Motor Tort | ☐ Motor Tort | ☐ Breach of Lease |
| ☐ Personal Injury | ☒ Product Liability | ☐ Mechanic's Liens |
| ☐ Assault & Battery | ☐ Other | ☐ Mortgage Foreclosure |
| ☐ Product Liability | **OTHER TORTS** | ☐ Specific Performance |
| ☒ Professional Malpractice | ☐ Business Torts | ☐ Condemnation |
| ☐ Other | ☐ Libel & Slander | ☐ Other Real Property |
| | ☐ Other Intentional Tort | **DISTRICT COURT/ADMVE AGE...** |
| **CONTRACT** | **MISCELLANEOUS** | ☐ District Court Appeal |
| | | ☐ Record   ☐ De Novo |
| ☐ Insurance | ☐ Adoption/Guardianship | ☐ Jury Trial Prayer |
| ☐ Other Contract | ☐ Other _____ | ☐ Appeal from Admin Agency |
| ☐ Confessed Judgment Note | | ☐ Workers Comp |
| **RELIEF REQUESTED** | | ☐ Other |
| ☒ Damages $3,000,000.00 | ☐ Injunction/Other Equitable Relief | |
| ☐ Declaratory Relief | ☐ Other: (please specify) _____ | |

CASE NAME: Lawlor                    v   Wright Medical Technology, et al.   CASE NUMBER: _____
_____                                                                              (Clerk to insert)
         Plaintiff                              Defendant

## Track Assignment (Requested):

| | | |
|---|---|---|
| ☐ | Expedited | Non-jury case expected to go to trial within 2 months to 7 months. |
| ☐ | Standard-Short | Case expected to go to trial in 7 months. |
| ☐ | Standard-Medium | Case expected to go to trial in 12 months. |
| ☒ | Standard-Complex | Case requires judicial intervention to determine appropriateness of the track. Please specify below your reasons for requesting this track: |

## Other Specialized Tracks

☐ Asbestos

☐ Lead Paint

☒ Other: (specify) Case potentially involves both medical malpractice and product
liability causes of action.  The medical negligence case has been filed in
the Health Claims Arbitration Office of Maryland, as required, but has not
(see continuation sheet)

_____              __11-26-03__
Signature of Plaintiff's Counsel/Party                        Date

LOUISE  A.  LOCK
Print Name

---

Defendant: I concur with Plaintiff's Information Sheet   ☐ Yes   ☐ No   If "No," you must file a separate Information
Sheet or state basis of disagreement.

I concur except as follows: _____

I plan to file:    ☐ Counter Complaint       ☐ Cross Complaint       ☐ Third Party Complaint

_____              _____
Signature of Defendant's Counsel/Party                        Date

_____
Print Name

_____
Address

_____
Telephone

yet been waived to Circuit Court.  For purposes of jucicial economy, all
causes should be tried together, and the above captioned matter should
be stayed pending the waiver of the medical negligence action.